**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

SHANNON GROSS, )
                  )
          Plaintiff, )
v. )      Civil Action No. 25-cv-03896
                  )
PSA AIRLINES, INC. )
                  )
          Defendant. )

**<u>DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER CASE</u>**

## TABLE OF CONTENTS

I.　　INTRODUCTION ..................................................................................................... 1

II.　　FACTUAL BACKGROUND AND PROCEDURAL HISTORY............................. 1

　　A.　Ms. Gross Is the Only Party Connected to Colorado ............................................. 1

　　B.　Ms. Gross Files Suit in this District About Events Unconnected to It .................... 1

　　C.　Litigating in this District Would Burden PSA and Witnesses................................. 3

　　D.　This District is More Congested than the Western District of North Carolina........ 4

III.　　LEGAL STANDARD ............................................................................................ 4

　　A.　Dismissal for Lack of Personal Jurisdiction ........................................................... 4

　　B.　Transfer of Venue.................................................................................................... 5

IV.　　ARGUMENT AND CITATION OF AUTHORITY ................................................. 5

　　A.　This Case Must Be Dismissed for Lack of Personal Jurisdiction .......................... 5

　　　　1.　This Court Lacks Specific Personal Jurisdiction over PSA .............................. 6

　　　　2.　This Court Lacks General Jurisdiction Over PSA............................................. 10

　　　　3.　Ms. Gross's Personal Jurisdiction Theory Is Unavailing ................................. 10

　　B.　Alternatively, this Case Should Be Transferred to the Western District of North

　　　　Carolina ................................................................................................................. 12

　　　　1.　Ms. Gross's Choice of Forum Carries Little Weight ....................................... 12

　　　　2.　Accessibility of Witnesses, Costs of Making the Necessary Proof, Relative

　　　　Advantages and Obstacles to a Fair Trial, and Practical Considerations All Support

　　　　Transfer................................................................................................................... 13

　　　　3.　Difficulties with Congested Dockets Favors Transfer..................................... 14

i

4.    The Remaining Factors Do Not Weigh Against Transfer ................................ 15

**V.    CONCLUSION ............................................................................................ 15**

## I.    INTRODUCTION

Defendant PSA Airlines, Inc. ("PSA") moves to dismiss Plaintiff Shannon Gross's case pursuant to Federal Rule of Civil Procedure 12(b)(2) because exercising personal jurisdiction over PSA in this forum would violate its due process rights. Alternatively, for the convenience of witnesses, and in the interest of judicial economy and other considerations, PSA asks this Court to transfer the case to the Western District of North Carolina pursuant to 28 U.S.C. § 1404.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Ms. Gross Is the Only Party Connected to Colorado

Ms. Gross is a former PSA pilot. (D.E. 1.) She is, and at all relevant times was, a Colorado resident. (*Id.* at 2.) PSA is a Pennsylvania corporation headquartered in Charlotte, North Carolina. (Movant's Appx., p. 3—Nigh Decl.) It does not have scheduled revenue flights in or out of Colorado and is not registered to do business there, nor does it maintain a base or corporate office, employ anyone, or directly advertise there. (Movant's Appx., pp. 3, 8—Nigh & Kelley Decls.)

### B.    Ms. Gross Files Suit in this District About Events Unconnected to It

In December 2025, Ms. Gross sued PSA, bringing claims under the Americans with Disabilities Act ("ADA") and Family and Medical Leave Act ("FMLA") (*see* D.E. 1 at 1) and alleging as follows. In April 2024, Ms. Gross consulted a PSA-affiliated counselor regarding her mental health and thereafter "began feeling as though she was wearing a target on her back." (*Id.* at 2-3.) In late June 2024, Ms. Gross failed a preliminary simulator ("SIM") check ride. (*Id.* at 4.) She then experienced "a contrived cycle" of

---

[1] Solely for purposes of this motion, PSA assumes the truth of the factual allegations in Ms. Gross's complaint.

repeated failures similarly situated colleagues did not; she failed additional training lessons and a re-administered check ride. (*Id.* at 4-5.) She then filed an FMLA leave request, a Short-Term Disability claim, and a continuous leave request with PSA's benefits partner, FH Solutions ("FHS"). (*Id.* at 6.) After receiving an extension of time to submit medical certification documents, Ms. Gross tried to correspond with FHS but "g[ot] the run-around." (*Id.* at 6-8.) FHS ultimately denied Ms. Gross's leave requests on August 29, 2024, and she resigned shortly thereafter. (*Id.* at 8-9.)

During the events at issue, Ms. Gross was based in Texas, having previously been based in Ohio and Virginia. (Movant's Appx., p. 8—Kelley Decl.) But she was permitted to reside wherever she chose under a policy imposing requirements on pilots who choose to commute to (rather than live at) their base. (*Id.*, p. 9) PSA's pilots regularly avail themselves of this policy, resulting in a pilot workforce spread across the country with pilots utilizing pass travel benefits provided by PSA's affiliate company to travel to and from their bases. (*Id.*) Ms. Gross used this policy to reside in Colorado throughout her employment with PSA, but, notably, her state income taxes were never withheld in Colorado and were instead withheld in Ohio and Virginia while she was based there.[2] (Movant's Appx., pp. 3, 9—Nigh & Kelley Decls.)

Throughout 2024 PSA conducted its pilot training in Charlotte; each SIM check ride and lesson Ms. Gross complains of occurred there. (Movant's Appx., p. 9—Kelley Decl.) Throughout 2024, FHS's office was located in Washington, D.C.; its employees who communicated with Ms. Gross or worked on her case, Tiara Owens, Taylor Perry,

---

[2] Texas, where Ms. Gross was last based, has no state income tax.

2

and D'Mara Jefferies, lived and worked remotely in Georgia, Washington, D.C., and Maryland, respectively. (Movant's Appx., pp. 11-12—Reed Decl.)

### C.    Litigating in this District Would Burden PSA and Witnesses

To defend this case, PSA would seek testimony from: Director of Labor and Employment Deborah Quigley, who would testify to PSA's human resources ("HR") policies and practices, how its Employee Assistance Program ("EAP") operates, and specifics regarding Ms. Gross's leave requests; Manager of SIM Training and Standards Chad Edwards, who would testify to PSA's training protocols and Ms. Gross's training failures; Ms. Gross's Chief Pilot, Justin Kelley, who would testify to Ms. Gross's employment generally and treatment of other pilots he supervised; and FHS's former Manager of Absence Management Services Maria Reed, who would testify to Ms. Gross's interactions with FHS. (Movant's Appx., p. 4—Nigh Decl.)

Ms. Quigley, Mr. Edwards and Mr. Kelley reside in Charlotte, and Ms. Reed resides in Virginia. (Movant's Appx., pp. 4, 12—Nigh & Reed Decls.) Transporting these witnesses to Denver would cost PSA $1,145 in round trip tickets and $514 per person, per day for lodging, meal, and other expenses, while transporting only Ms. Reed to Charlotte would cost $161 in round trip tickets and $211 per day in expenses. (Movant's Appx., p. 4—Nigh Decl.) PSA would also lose Ms. Quigley, Mr. Edwards, and Mr. Kelley's productivity while away from Charlotte. (*Id.*, p. 5.)

Other possible witnesses in this case include a representative from the EAP Ms. Gross allegedly utilized and the instructors who evaluated Ms. Gross's SIM check rides and training sessions—Nolan Murphy, Zach Waddell, Scott Connelly, Sam Howard,

3

Devin Mizell, and Marc Jaubert. (*Id.*) PSA's EAP vendor maintains six corporate offices, five on the East Coast and one in San Diego, California, making travel to Denver more onerous. (*Id.*) Upon information and belief, Mr. Murphy resides in Atlanta, Georgia; Messrs. Waddell, Connelly, and Howard reside in the Charlotte area; Mr. Mizell resides in Jacksonville, Florida; and Mr. Jaubert resides in Rock Hill, South Carolina. (*Id.*) Of these six instructors, PSA would lose the productivity of four who are actively employed if called away from Charlotte. (*Id.*)

### D. This District is More Congested than the Western District of North Carolina

In the District of Colorado, the median time from filing to disposition of civil cases is 7.5 months, the median time from filing to trial in civil cases is 39 months, the number of pending cases per judge is 650, and the number of weighted filings per judge is 719. https://www.uscourts.gov/data-news/data-tables/2025/12/31/federal-court-management-statistics/n-a-1. In the Western District of North Carolina, the median time from filing to disposition of civil cases is 5.8 months, the median time from filing to trial in civil cases is 25 months,[3] the number of pending cases per judge is 386, and the number of weighted filings per judge is 416. *Id*.

## III. LEGAL STANDARD

### A. Dismissal for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) "allows a defendant to challenge a court's exercise of personal jurisdiction over it." *Pilgrim's Pride Corp. v. Allegiant Elec., Inc.*, 717 F. Supp. 3d 1036, 1043 (D. Colo. 2024); *see also* Fed. R. Civ. P. 12(b)(2).

---

[3] The most recent data on this statistic in the Western District of North Carolina was published June 2025. https://www.uscourts.gov/data-news/data-tables/2025/06/30/federal-court-management-statistics/n-a-1.

Importantly, "[t]he plaintiff bears the burden of demonstrating that a court has personal jurisdiction over the defendant." *Id.* When a court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction through affidavits or other written materials. *Id.* The court must take well-pleaded complaint allegations as true, so long as the defendant's affidavits do not contradict them. *Id.* Factual disputes in affidavits must be resolved in the plaintiff's favor, but courts "need not credit conclusory, implausible, or speculative allegations." *See id.*

### B.    Transfer of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quotations omitted). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515.

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### A.    This Case Must Be Dismissed for Lack of Personal Jurisdiction

This Court must dismiss Ms. Gross's complaint because it lacks personal jurisdiction over PSA. *See* Fed. R. Civ. P. 12(b)(2). Exercise of personal jurisdiction over a non-resident defendant must comply with the forum state's long-arm statute and

constitutional due process requirements.[4] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). Courts may, consistent with due process, exercise personal jurisdiction over nonresident defendants only if there exist "minimum contacts" between them and the forum state. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). This standard may be met through either specific or general jurisdiction. *Id.* Ms. Gross's inability to establish either is discussed in turn.

### 1.    This Court Lacks Specific Personal Jurisdiction over PSA

To evaluate specific jurisdiction, this Court "must determine whether the defendant has such minimum contacts with the forum state that [it] should reasonably anticipate being haled into court there"—that is, whether the defendant "purposefully directed its activities at residents of the forum" and "whether the plaintiff's claim arises out of or results from actions by the defendant *[it]self* that create a substantial connection with the forum state." *Id.* at 1091 (quotations omitted). If sufficient minimum contacts exist, this Court "must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice"—that is, whether personal jurisdiction is "reasonable" under the circumstances. *Id.* (quotations omitted). Neither requirement is met here.

### a)    Minimum Contacts

PSA lacks minimum contacts with Colorado, as it has not purposefully directed any activities at its residents. "Purposeful availment requires actions by the Defendant

---

[4] Colorado's long-arm statute extends jurisdiction to the full extent permitted by the Constitution, so "the jurisdictional analysis [] reduces to a single inquiry of whether jurisdiction offends due process." *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 668 (D. Colo. 2019).

which create a substantial connection with the forum state." *Id.* at 1092; *see also Zvelo*, 418 F. Supp. 3d at 669 ("A defendant has 'purposefully directed' its activities at Colorado or its residents when it has (1) taken intentional action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado"). PSA has taken no actions to create any connection with Colorado. PSA does not have scheduled revenue flights to or from Colorado, is not registered to do business, maintains no base or corporate offices, and does not employ anyone or directly advertise there. (*See* Movant's Appx., pp. 3, 8—Nigh & Kelley Decls.)

Nor do Ms. Gross's claims arise out of actions by PSA creating a substantial connection with Colorado. Indeed, none of PSA's actions giving rise to Ms. Gross's claim created any connection with Colorado at all, as the misconduct Ms. Gross attributes to it occurred in North Carolina, Washington, D.C., Maryland, Virginia, and Georgia. (*See* D.E. 1 at 2-9; Movant's Appx., p. 9, 11-12—Kelley & Reid Decls.); *see also Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) ("Specific jurisdiction is proper if there is an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (Quotations omitted).) PSA did not even withhold Ms. Gross's Colorado state income taxes, instead withholding for the states where she was based. (*See* Movant's Appx., p. 3—Nigh Decl.)

### b) Fair Play and Substantial Justice

Exercising personal jurisdiction over PSA would also offend fair play and substantial justice. In making this determination, courts consider:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095. "[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* The Tenth Circuit has found the burden on defendants significant where they were foreign corporations "who ha[d] no license to conduct business in [the state], maintain[ed] no offices in [the state], employ[ed] no agents in [the state], and insure[d] no [state] residents." *Id.* at 1096.

PSA would be significantly burdened if this case were litigated in Colorado. PSA is not incorporated in Colorado and is not registered to conduct business there, nor does it have scheduled flights for revenue or maintain offices, bases, or employees there. *See OMI Holdings*, 149 F.3d at 1096. And as discussed below, PSA's witnesses are all located in or near Charlotte, so to litigate in this forum PSA must pay to transport them to Denver and lose their productivity while away from Charlotte. PSA would lose the productivity of any SIM instructor Ms. Gross would call away from Charlotte as a witness as well. (*See* Movant's Appx., p. 5—Nigh Decl.) This factor therefore weighs against personal jurisdiction.

The interstate judicial system's interest in efficient resolution likewise weighs against personal jurisdiction. This factor "examines whether the forum state is the most efficient place to litigate the dispute"; the keys are "the location of witnesses . . . where the wrong underlying the lawsuit occurred . . . what forum's substantive law governs the

8

case . . . , and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, 149 F.3d at 1097 (internal citations omitted). Colorado is not the most efficient place to litigate this dispute. The wrongs Ms. Gross complains of did not take place there. (*See* Movant's Appx., p. 9, 11-12—Kelley & Reid Decls.) And nearly all necessary witnesses are in other (distant) states. Nor is jurisdiction necessary to prevent piecemeal litigation, as Ms. Gross may refile her claims in a different federal court.[5]

Ms. Gross's interest in receiving convenient and effective relief does not favor jurisdiction. "This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing h[er] to litigate in [] another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097. Ms. Gross has brought claims under federal law, so her chances of recovery will not be at all diminished by litigating in a different federal forum. (*See* D.E. 1 at 1.) Nor would requiring Ms. Gross to do so (*e.g.,* in the Western District of North Carolina) impose travel burdens so onerous they would practically foreclose her from pursuing her claims.

On balance, exercising personal jurisdiction over PSA would offend traditional notions of fair play and substantial justice.[6] Given the absence of any meaningful

---

[5] Ms. Gross's claims are all governed by federal statutes applicable throughout the nation, so the forum's substantive law weighs neither for nor against jurisdiction.

[6] PSA acknowledges Colorado's interest in resolving a dispute involving one of its residents. But it is the *only* factor weighing in favor of personal jurisdiction. The shared interest of the several states in furthering fundamental substantive social policies neither weighs for or against jurisdiction. "[A]nalysis of th[at] factor focuses on whether the exercise of personal jurisdiction . . . affects the substantive social policy interests of other states or foreign nations." *See OMI Holdings*, 149 F.3d at 1097. Ms. Gross's

9

contacts between PSA and Colorado, Ms. Gross cannot establish specific personal jurisdiction over PSA in this forum. *See OMI Holdings*, 149 F.3d at 1092 (explaining, "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction" (quotations omitted)).

### 2.      This Court Lacks General Jurisdiction Over PSA

For the same reasons this Court lacks specific jurisdiction over PSA, it lacks general jurisdiction. General jurisdiction is available if the defendant's affiliations with the forum state are so continuous and systematic that it is essentially at home there. *Pilgrim's Pride*, 717 F. Supp. 3d at 1044. "It is not enough that an out-of-state defendant may have contractual relationships or business dealings with a person or entity located in the forum state"—"a foreign corporation must have [] substantial . . . contacts with the forum state." *Id.* at 1044-45.

As discussed above, PSA does not maintain minimum contacts with Colorado, much less continuous and systematic contacts. *See OMI Holdings*, 149 F.3d at 1091 (describing the minimum contacts test for general jurisdiction as "more stringent"). This Court therefore lacks general and specific personal jurisdiction over PSA and should dismiss the Complaint. *See* Fed. R. Civ. P. 12(b)(2); *OMI Holdings*, 149 F.3d at 1090.

### 3.      Ms. Gross's Personal Jurisdiction Theory Is Unavailing

Ms. Gross bases this Court's personal jurisdiction over PSA on "[t]he parties' employment relationship [] based in Colorado," alleging "PSA covered the cost of flying [her] to and from Colorado to various airports in other states across the country from

---

claims arise under federal law, so the states' interest in furthering substantive social policies would be adequately served by litigating this dispute in any federal forum.

which she rendered services as part of her employment." (D.E. 1 at 3.)

The minimum contacts analysis, however, "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("[P]ersonal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."). PSA's contacts with Ms. Gross, therefore, are simply not enough to establish personal jurisdiction.

Moreover, PSA merely permitted Ms. Gross to utilize travel privileges provided by its affiliate corporation to travel to and from Colorado as part of a broader policy in which its pilots are permitted to (with stipulations) live wherever they please. (*See* Movant's Appx., p. 9—Kelley Decl.) PSA's pilots regularly avail themselves of this benefit, resulting in a pilot workforce spread across the country. (*Id.*) "The relevant inquiry is not whether defendant has minimum contacts with the United States in general and, incidentally, Colorado, but whether defendant has purposefully availed itself of the privilege of conducting activities within the forum State or [] purposefully directed its conduct into the forum State." *Zvelo*, 418 F. Supp. 3d at 669 (quotations omitted). Ms. Gross's reliance on PSA's actions under its policy is therefore misplaced.

Finally, Ms. Gross cannot base personal jurisdiction on her own decision to live in Colorado. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. "[C]ourts have been unwilling to allow states to assert personal jurisdiction over foreign

defendants where the defendant's presence in the forum arose from the unilateral acts

of someone other than the defendant." *OMI Holdings*, 149 F.3d at 1092. Ms. Gross's

unilateral residency decision thus cannot support personal jurisdiction over PSA. Thus,

dismissal is proper.

### B. Alternatively, this Case Should Be Transferred to the Western District of North Carolina

If this Court decides it has personal jurisdiction over PSA, it should transfer this

case to the Western District of North Carolina.[7] *See* 28 U.S.C. § 1404(a). In considering

transfer under § 1404(a), courts weigh the following discretionary factors:

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other
> sources of proof, including the availability of compulsory process to insure
> attendance of witnesses; the cost of making the necessary proof;
> questions as to the enforceability of a judgment if one is obtained; relative
> advantages and obstacles to a fair trial; difficulties that may arise from
> congested dockets; the possibility of the existence of questions arising in
> the area of conflict of laws; the advantage of having a local court
> determine questions of local law; and[ ] all other considerations of a
> practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). As

discussed below, these factors weigh in favor of transfer.

### 1. Ms. Gross's Choice of Forum Carries Little Weight

Courts "accord little weight to a plaintiff's choice of forum where the facts giving

rise to the lawsuit have no material relation or significant connection to the plaintiff's

chosen forum." *Id.* at 1168. That is the case here. The facts underpinning this lawsuit

---

[7] This case could have been originally brought in that forum. Venue in civil actions is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Each of Ms. Gross's training and check ride failures, which form a substantial part of her claims, *see* D.E. 1 at 4-5, occurred in Charlotte, thus rendering venue proper there.

are largely unrelated to Colorado. The events Ms. Gross complains of occurred on the East Coast. Ms. Gross's choice of forum thus does not preclude transfer.

### 2. Accessibility of Witnesses, Costs of Making the Necessary Proof, Relative Advantages and Obstacles to a Fair Trial, and Practical Considerations All Support Transfer

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Id.* at 1169 (quotations omitted). The movant must identify the witnesses and their locations, indicate the materiality of their testimony, and demonstrate such witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that compulsory process would be necessary. *Id.*

However, while the final three factors are relevant, "they all relate to the availability of the witnesses to testify rather than the *convenience* of witnesses." *Ginegar LLC v. Slack Techs., Inc.*, No. 21-CV-00494-RMR-STV, 2021 WL 8153754, at *7 (D. Colo. Dec. 4, 2021), *R&R adopted*, No. 21-CV-0494-RMR-STV, 2022 WL 1198911 (D. Colo. Jan. 4, 2022). Indeed, the Tenth Circuit has previously evaluated the propriety of transfer based solely on witness location. *See Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1122 (10th Cir. 2003). Moreover, "numerous courts in this District have considered the inconvenience to employee witnesses in their consideration of the accessibility of witnesses." *Ginegar*, 2021 WL 8153754 at *8.

Convenience of witnesses supports transfer to the Western District of North Carolina. PSA's witnesses are either in Charlotte or far closer to Charlotte than Denver. Ms. Quigley, who would testify to PSA's HR policies and practices and specifics regarding Ms. Gross's leave requests, Mr. Edwards, who would testify to PSA's training

13

methods and protocols and Ms. Gross's training failures, and Mr. Kelley, who would testify to Ms. Gross's employment generally and treatment of other pilots he supervised, are all in Charlotte. (*See* Movant's Appx., p. 4—Nigh Decl.) Ms. Reed, who would testify to Ms. Gross's interactions with FHS, is in Virginia. (*See* Movant's Appx., pp. 4, 12—Nigh & Reid Decls.)  Even the convenience of Ms. Gross's potential witnesses supports transfer. The instructors who evaluated her failed line check rides and training exercises are either in Charlotte or far closer to Charlotte than Denver. (*See* Movant's Appx., p. 5—Nigh Decl.) And PSA's EAP provider is more likely to be far closer to Charlotte than Denver as well. (*Id.*)

Similarly, the costs of making the necessary proof favor transfer to the Western District of North Carolina. If this case were litigated in Denver instead of Charlotte, PSA would have to spend $1,145 in round trip tickets and $514 per person per day to transport and keep its witnesses there and lose their productivity for an indeterminate length of time. (*Id.*, pp. 4-5.) Ms. Gross would incur similar expenses if she were required to call from Charlotte any SIM instructor who failed her, and if she were to call any instructor still employed by PSA, PSA would lose their productivity.

For all the same reasons, and those discussed in Section IV.A.1.b), the relative advantages and obstacles to a fair trial and considerations of a practical nature that make a trial easy, expeditious and economical favor transfer as well.

### 3.    Difficulties with Congested Dockets Favors Transfer

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing

14

to trial, pending cases per judge, and average weighted filings per judge." *Bartile Roofs*, 618 F.3d at 1169. This District significantly exceeds the Western District of North Carolina in every one of these metrics. This factor therefore favors transfer.

### 4.    The Remaining Factors Do Not Weigh Against Transfer

The remaining factors merit little discussion and do not weigh against transfer. There are no questions as to the enforceability of a judgment if one is obtained; Ms. Gross may enforce a judgment she obtains in the Western District of North Carolina more easily than she could enforce a judgment obtained in this District. *Bartile Roofs*, 618 F.3d at 1167. And the possibility of questions arising in the area of conflict of laws and the advantage of having a local court determine questions of local law are not relevant here, as Ms. Gross's claims are all brought under federal statutes. (*See* D.E. 1 at 1); *Bartile Roofs*, 618 F.3d at 1167.

Thus, fairness and convenience support transferring this case to the Western District of North Carolina, and this Court should exercise its discretion to do so, absent dismissal. *See* 28 U.S.C. § 1404; *Chrysler Credit Corp.*, 928 F.2d at 1516.

## V.    CONCLUSION

WHEREFORE, PSA respectfully requests that this Court enter an Order dismissing this case for lack of personal jurisdiction, or, alternatively, transferring it to the Western District of North Carolina.

Dated: February 20, 2026              Respectfully submitted,

*Sarah P. Wimberly*

15

Sarah Pierce Wimberly
FordHarrison LLP
271 17th Street NW, Suite 1900
Atlanta, GA 30363
P: 404-888-3842
F: 404-888-3863
swimberly@fordharrison.com

Attorney for Defendant PSA Airlines, Inc.

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2026, a copy of the foregoing was filed by use of the Court's electronic case filing system. All parties to this case have entered an appearance and thus may access this document through the Court's electronic case filing system.

Sarah Pierce Wimberly
FordHarrison LLP
271 17th Street NW, Suite 1900
Atlanta, GA 30363
404-888-3842
404-888-3863
swimberly@fordharrison.com

Attorney for Defendant PSA Airlines, Inc.

17